IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LYNN MEISTER PETERSON, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil No. 3:21-CV-02186-K |
| | § | |
| SAFECO INSURANCE COMPANY OF INDIANA, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant Safeco Insurance Company of Indiana's ("Safeco") Motion for Summary Judgment and Brief and Appendix in support thereof, Doc. Nos. 40–42, Plaintiff Lynn Meister Peterson's Response to Defendant's Motion for Summary Judgment and Brief and Appendix in support thereof, Doc. Nos. 48–50, and Safeco's Reply Brief in Support of Its Motion for Summary Judgment and Appendix in support thereof. Doc. Nos. 51–52.

Upon consideration of the parties' submissions, the Court **GRANTS** Safeco's Motion for Summary Judgment. In 2019, a tornado caused damage to Lynn Meister Peterson's home in Dallas. Ms. Peterson made a claim with her home insurer, Safeco, who issued several payments totaling over $270,000. Dissatisfied with this sum, Ms. Peterson sued Safeco, and Safeco responded by demanding an appraisal. The appraisers returned with a higher valuation of the claim, whereupon Safeco issued a new payment of almost $160,000, together with almost $60,000 in interest. Because Safeco's

1

pre- and post-appraisal payments give Ms. Peterson all the relief to which she is entitled, the Court **DISMISSES** her claims with prejudice.

## I. BACKGROUND

In February 2019, Ms. Peterson insured a Dallas residence with Safeco for the period from April 9, 2019 to April 9, 2020.  Doc. No. 42 at 11, 27.  Her coverage extended to personal property, certain nearby structures like fences, and up to $76,900 in living expenses if a loss rendered the residence uninhabitable. *Id.* at 27–37.  In the event of covered damage to a non-fence structure, Safeco would reimburse her for the cost to repair or replace the structure if it was less than $1,000. *Id.* at 42.  If it exceeded that amount, Safeco would only reimburse her for the actual cash value of the damaged structure until she repaired or replaced the structure, at which point it would pay any additional replacement cost. *Id.*  Ms. Peterson and Safeco each received the right to demand a binding appraisal to resolve valuation disagreements. *Id.* at 80–81.

On October 20, 2019, a tornado damaged Ms. Peterson's residence.  Doc. No. 50 at 3.  A later engineering report indicates that the tornado threw debris at the home and knocked over a tree, which crashed into its roof. *Id.* at 11–12.  Ms. Peterson filed a claim for coverage with Safeco before the end of October. *Id.* at 3.

Safeco inspected Ms. Peterson's home on October 31, 2019 and paid $6,250 to remove the tree about a week later.  Doc. No. 42 at 85, 99.  On November 27, 2019, Safeco issued a repair estimate and a $52,929.12 payment, representing the estimated actual cash value of damaged structures on Ms. Peterson's property less Ms. Peterson's

deductible. *Id.* at 96–99, 121–26. Safeco informed Ms. Peterson that it would update its estimate once it received an engineering report from Ms. Peterson's contractor. *Id.* at 89. The following month, Safeco began paying for Ms. Peterson to live in a rental property. *Id.* at 271–90. This continued through November 2020 at a cost totaling $86,018.50, well over the coverage limit for living expenses. *Id.* at 298–306.

On May 5, 2020, Safeco finally received an engineering report from Ms. Peterson's contractor. Doc. No. 52 at 5–6. The report called for $23,371.20 in general demolition, temporary repair, and water extraction and remediation costs, and it pegged the replacement cost for Ms. Peterson's home and other damaged structures at a total of $202,615.42. *Id.* at 11, 26–27. In response, Safeco prepared a revised estimate setting the total replacement cost for the damaged structures at $217,198.51. Doc. No. 42 at 153–54. Ms. Peterson's adjuster agreed to this estimate, and Safeco issued a $94,675.26 payment, representing the actual cash value of the damaged structures less prior payments and deductible. *Id.* at 257–264. The payment went out on July 1, 2020. *Id.* at 263–64. Safeco later paid out an additional $31,372.19 in recoverable depreciation, suggesting that Ms. Peterson may have replaced or repaired some property and become entitled to the difference between its actual cash value (which is net of depreciation) and its replacement cost (which is not). Doc. No. 266–69.

Evidently unsatisfied with Safeco's estimate, Ms. Peterson hired an engineer to inspect her property on December 30, 2020. Doc. No. 50 at 11. In a report curiously dated thirteen days before his inspection, the engineer opined that additional repairs

3

to the property were necessary to bring it up to code. *Id.* at 12. Ms. Peterson's contractor more than doubled its repair estimate following the issuance of the report. Doc. No. 12 at 213–14. It is unclear whether Ms. Peterson provided the estimate to Safeco, and she does not appear to have provided the report to Safeco until May 28, 2021, when she attached it to a demand letter. Doc. No. 50 at 5–9. Safeco did not revise its repair estimate in response.

Ms. Peterson sued Safeco in state court to collect the money she thought Safeco still owed her. Doc. No. 1-3. Safeco removed the suit to this Court and moved to compel appraisal of the amount owed. Doc. Nos. 1, 10. The Court granted the motion. Doc. No. 15. The parties then appointed appraisers, and the appraisers sided with Ms. Peterson. Doc. No. 42 at 323. They assessed Ms. Peterson's losses at $434,956.73 in replacement cost value or $344,804.06 in actual cash value. *Id.* After accounting for Ms. Peterson's deductible and its own prior payments, Safeco paid Ms. Peterson an additional $159,577.49 based on the actual cash value figure, together with $58,652.27 in interest under Texas's Prompt Payment of Claims Act (the "Prompt Payment Act"). Doc. No. 42 at 325–31. After receiving the payment, Ms. Peterson stated that she intended to repair her property and hired a contractor for the purpose. Doc. No. 50 at 4.

Without opposition, Ms. Peterson also filed an amended complaint. Doc. No. 37. In the amended complaint, which is her live pleading, Ms. Peterson alleges that Safeco breached its insurance policy contract with her, violated the Prompt

4

Payment Act, engaged in unfair or deceptive acts or practices under Chapter 541 of the Texas Insurance Code, and breached its duty of good faith and fair dealing. *Id.* ¶¶ 16–19. Among other things, she seeks actual and exemplary damages, interest, and attorneys' fees. *Id.* at 10–12. Safeco now moves for summary judgment on all of Ms. Peterson's claims. Doc. No. 40.

## II.   LEGAL STANDARD

The Court grants motions for summary judgment when there is no genuine dispute between the parties about any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if a reasonable jury could resolve the parties' factual disagreement in favor of either party and the resolution could affect the outcome of their litigation. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).

"A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record," showing that "the materials cited do not establish the absence or presence of a genuine dispute," or showing "that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

## III.   DISCUSSION

The Court grants Safeco summary judgment on all of Ms. Peterson's claims. The Court divides its discussion of this decision into three subsections. In the first

5

subsection, the Court considers Ms. Peterson's breach of contract claim under her insurance policy. The Court then considers Ms. Peterson's claims under the Prompt Payment Act in the second subsection. The Court concludes its discussion in the third subsection with a review of Ms. Peterson's claims for violations of Chapter 541 of the Texas Insurance Code and the common law duty of good faith and fair dealing.

### A. Breach of Contract

The Court first grants summary judgment on Ms. Peterson's breach of contract claim because Ms. Peterson has already received the benefits to which she is entitled under her policy contract with Safeco. The policy provides that Ms. Peterson and Safeco may determine the amount of a covered loss by appraisal and that the determination of the appraisers is binding. Doc. No. 42 at 80–81. The parties took Ms. Peterson's claim under the policy to appraisal, and Safeco paid the appraised value of the claim. *Id.* at 323–31. Ms. Peterson therefore got what the policy guaranteed her and has no claim to further benefits under the policy. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 132–33 (Tex. 2019); *Randel v. Travelers Lloyds of Tex. Ins. Co.*, 9 F.4th 264, 267–68 (5th Cir. 2021).

The Court denies Ms. Peterson's request to withhold summary judgment based on the hypothetical possibility that Safeco will breach the policy in the future. Her theory is that Safeco may eventually owe her the replacement cost of her property, which exceeds the actual cash value it used to calculate its payment under the appraisal award. Doc. No. 49 at 12–13. This prediction may prove correct, but it is still just a

prediction. By the terms of the policy, because the replacement cost would equal or exceed $1,000, Safeco need not pay that cost until Ms. Peterson actually replaces or repairs her property. Doc. No. 42 at 42. She has not done so. The present record reveals only that Ms. Peterson intends to repair her property. Doc. No. 50 at 4. Since the repairs have not occurred, no jury could find that Safeco has an obligation to pay the replacement cost of the property, much less that Safeco had breached that obligation. *Kahlig Enters., Inc. v. Affiliated FM Ins. Co.*, 2023 WL 1141876, at *4 (W.D. Tex. Jan. 30, 2023), *aff'd*, 2024 WL 1554067 (5th Cir. Apr. 10, 2024); *Lakeside FBBC, LP v. Everest Indem. Ins. Co.*, 612 F. Supp. 3d 667, 676 (W.D. Tex. 2020); *Martinez v. State Farm Lloyds*, 2024 WL 1348439, at *3 (S.D. Tex. Mar. 29, 2024); *Garcia v. Liberty Ins. Corp.*, 2019 WL 825883, at *6–7 (S.D. Tex. Jan. 17, 2019), *rep. & rec. adopted sub nom. Garcia v. Liberty Mut. Ins. Co.*, 2019 WL 1383011 (S.D. Tex. Mar. 27, 2019).

### B. Prompt Payment Act

The Court next grants Safeco summary judgment on Ms. Peterson's Prompt Payment Act claims. Safeco has already fully compensated Ms. Peterson for its violations of the Act, so there is nothing left for Ms. Peterson to recover.

The Prompt Payment Act imposes a series of deadlines on an insurer's handling of a claim. Two of these deadlines are relevant here. First, with limited exceptions, an insurer has fifteen business days from the receipt of "all items, statements, and forms required by the insurer to secure final proof of loss" to "notify a claimant in writing of the acceptance or rejection of a claim." Tex. Ins. Code § 542.056(a). Second, unless

7

another statute provides otherwise, an insurer must pay a claim for which it is liable within sixty days of "receiving all items, statements, and forms reasonably requested and required under Section 542.055" of the Insurance Code. *Id.* § 542.058(a). Section 542.055 requires an insurer to make a prompt request to a claimant for "items, statements, and forms that the insurer reasonably believes, at that time, will be required" and authorizes follow-up requests. *Id.* §§ 542.055(a)–(b). An insurer who violates either deadline in handling a first-party real property insurance claim for tornado damage is liable for the amount of the claim, simple interest, and attorneys' fees. *Id.* §§ 542.060(c), 542A.001(2), 542A.002(a).

Ms. Peterson claimed in her amended complaint that Safeco violated both deadlines, but in her summary judgment briefing she no longer defends her claim that Safeco violated the first deadline. Doc. No. 37 ¶ 17; Doc. No. 49 at 12. The Court therefore considers only her claim that Safeco violated the second deadline by failing to pay her claim within sixty days of receiving information reasonably requested from her.

That claim fails because Safeco has paid what the Prompt Payment Act requires for its violation. There is no dispute that some payment under the Act was necessary. Safeco only paid the full amount of Ms. Peterson's claim after it received the appraisal award fixing that amount, and Safeco does not contest that the deadline to pay the claim had passed by that point. Doc. No. 42 at 323–31; *see* Doc. No. 41 at 14. Appraisal does not pause Prompt Payment Act deadlines for accepted claims. *Hinojos v. State Farm Lloyds*, 619 S.W.3d 651, 656 (Tex. 2021); *Schnell v. State Farm Lloyds*, 98

F.4th 150, 160 (5th Cir. 2024). Because its payment was untimely, Safeco had to pay statutory interest and attorneys' fees under the Act in addition to the appraised value of Ms. Peterson's claim. Tex. Ins. Code § 542.060(c). After calculating Ms. Peterson's attorneys' fees at zero dollars, this is what Safeco did. Doc. No. 42 at 325–31. The result is that Ms. Peterson is not entitled to any further relief for her Prompt Payment Act claims. *McCall v. State Farm Lloyds*, 688 F. Supp. 3d 372, 378 (N.D. Tex. 2023) (Boyle, J.); *Arnold v. State Farm Lloyds*, 2023 WL 2457523, at *5 (S.D. Tex. Mar. 10, 2023) (Rosenthal, J.); *Bonner v. Allstate Vehicle & Prop. Ins. Co.*, 2024 WL 718202, at *4–5 (S.D. Tex. Jan. 3, 2024).

The Court is unpersuaded by Ms. Peterson's efforts to show that Safeco owes her additional interest and attorneys' fees. Her sole objection to Safeco's interest calculation is that Safeco made a tardy pre-appraisal payment in July 2020 on which it should have—but failed to—pay interest. Doc. No. 49 at 12. The problem with this objection is its factual premise. Ms. Peterson offers no evidence that the July 2020 payment was untimely, and the record suggests the opposite was true. Safeco did not have to make any payment until sixty days after it received "all items, statements, and forms [it] reasonably requested." Tex. Ins. Code § 542.058(a). As of November 27, 2019, Safeco had requested an engineering report from Ms. Peterson that it needed to update its preliminary repair estimate. Doc. No. 42 at 89. Safeco only received the report on May 5, 2020. Doc. No. 52 at 5–6. Its July 2020 payment issued on the first of the month, within sixty days after the receipt. Doc. No. 42 at 263–64. The Court

9

concludes that this payment was timely and that Ms. Peterson's objection is factually unsound. *See Womack v. Meridian Sec. Ins. Co.*, 2022 WL 1518934, at *4 (N.D. Tex. Feb. 17, 2022) (O'Connor, J.) (insurer properly delayed payment until shortly after receiving plaintiff's engineering report)

With respect to attorneys' fees, binding precedent forecloses Ms. Peterson's argument that she should recover more than the zero dollars Safeco calculated. In *Rodriguez v. Safeco Insurance. Co. of Indiana*, the Supreme Court of Texas held that an insured pursuing a first-party real property insurance claim for tornado damage cannot recover attorneys' fees if the insurer pays the full appraised value of the claim and any possible statutory interest on that amount. 684 S.W.3d 789, 792 (Tex. 2024). This is because the Insurance Code fixes the recoverable attorneys' fees for such a claim at the lesser of the results of three calculations, one of which is zero when the insurer pays the appraised value and interest. Tex. Ins. Code § 542A.007(a). The relevant calculation calls for a multiple of "the amount to be awarded in the judgment to the claimant for the claimant's claim under the insurance policy for damage to or loss of covered property"—zero, since there is nothing to award in a judgment—divided by "the amount alleged to be owed on the claim for that damage or loss in a notice given under this chapter." *Id.* § 542A.007(a)(3). The familiar principle that the product or quotient of zero and another number is zero explains why this calculation comes to zero dollars. Safeco correctly carried out this calculation and declined to pay Ms. Peterson's attorneys' fees.

10

That exhausts Ms. Peterson's objections to Safeco's payments in satisfaction of its Prompt Payment Act liability. Since Ms. Peterson has not shown she is entitled to anything Safeco has not already paid, the Court must grant summary judgment on her Prompt Payment Act claims.

**C. Chapter 541 and Common Law Good Faith and Fair Dealing**

The Court lastly grants Safeco summary judgment on Ms. Peterson's claims for violations of Chapter 541 of the Texas Insurance Code and the common law duty of good faith and fair dealing. The Court finds no evidence that these violations caused Ms. Peterson compensable injuries for which Safeco has failed to pay.

Chapter 541 of the Insurance Code prohibits "unfair methods of competition" and "unfair or deceptive acts or practices." Tex. Ins. Code § 541.001(1); *Lyda Swinerton Builders, Inc. v. Okla. Sur. Co.*, 903 F.3d 435, 450 (5th Cir. 2018). The overlapping common law duty of good faith and fair dealing prohibits an insurer from denying or delaying payment of a claim when it lacks a "reasonable basis" for doing so or "should have known that no such basis existed." *Wells v. Minn. Life Ins. Co.*, 885 F.3d 885, 897 (5th Cir. 2018) (citation omitted).

Although Ms. Peterson pled various theories of recovery based on Chapter 541 and the duty of good faith and fair dealing, she urges only a single unified theory of recovery with specificity in her summary judgment briefing. Doc. No. 37 ¶¶ 18–19; Doc. No. 49 at 15–17. According to Ms. Peterson, Safeco violated Chapter 541 and

11

the common law duty by unreasonably delaying its investigation of her claim and failing to pay her promptly. Doc. No. 49 at 16–17.

Because Safeco has paid all substantiated damages caused by its alleged delays, the Court need not pass on Safeco's investigatory and payment decisions to reject this theory. To recover under Chapter 541, an insured must prove a statutory violation that (1) caused her to lose benefits she was entitled to receive under her insurance policy or (2) caused her an injury independent of her right to policy benefits. *In re State Farm Mut. Auto. Ins. Co.*, 629 S.W.3d 866, 873 (Tex. 2021) (orig. proceeding) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 489, 495, 499, 500 (Tex. 2018)). The same framework applies, *mutatis mutandis*, to claims for breach of the duty of good faith and fair dealing. *See Old Am. Ins. Co. v. Lincoln Factoring, LLC*, 571 S.W.3d 271, 277–78 (Tex. App.—Fort Worth 2018, no pet.); *Lee v. Liberty Ins. Corp.*, 2021 WL 4502323, at *14 (N.D. Tex. Sept. 30, 2021) (Lindsay, J.). Under that framework, Ms. Peterson has no route to recovery. Safeco paid her the benefits she was entitled to receive under her insurance policy as determined through binding appraisal, and she offers no evidence of any independent injury entitling her to additional relief. Doc. No. 42 at 325–31; *McCall*, 688 F. Supp. 3d at 378–79; *Martinez*, 2024 WL 1348439, at *10–11; *Bonner*, 2024 WL 718202, at *3; *Lee*, 2021 WL 4502323, at *14–15.

Ms. Peterson's primary argument against this conclusion lacks record support. She says that she should be able to recover out-of-pocket living expenses she incurred because Safeco's delays investigating and paying her claim prevented her from making

12

enough repairs to her home to enable her to live there. Doc. No. 49 at 16–17. Although Ms. Peterson briefly suggests that she is entitled to reimbursement of these expenses under her policy, this is better construed as a claim that she suffered an injury independent of her right to policy benefits since Safeco paid more than the policy limit for living expenses. *Id.*; Doc. No. 42 at 27, 298–306. The threshold issue with the claim even on this friendly construction is that Ms. Peterson points to no evidence Safeco's delays prevented her from making her home habitable by the time she began paying living expenses out of pocket and no evidence that she even paid out of pocket at all. *See* Doc. No. 49 at 15–17. Whatever the merits of Ms. Peterson's independent injury theory may be, no jury could find an injury without such evidence. *See Bonner*, 2024 WL 718202, at *3 (unsupported assertions of independent injury are insufficient at summary judgment); *Atkinson v. Meridian Sec. Ins. Co.*, 2022 WL 3655323, at *6 (W.D. Tex. Aug. 24, 2022) (same).

Ms. Peterson's remaining arguments for recovering more than Safeco paid her require little discussion to reject. She says Safeco owes her attorneys' fees, but the Court found otherwise in the previous subsection. *Supra* Section III.B; *see Ortiz*, 589 S.W.3d at 134; *McCall*, 688 F. Supp. 3d at 379. She also errs in suggesting that she is entitled to prejudgment interest. That puts the cart before the horse. Since Ms. Peterson has not prevailed on her claims, there is no judgment in her favor and therefore no prejudgment interest to collect. *Kahlig Enters, Inc. v. Affiliated FM Ins. Co.*, 2024 WL

13

1554067, at *4 (5th Cir. Apr. 10, 2024); *Royal Hosp. Corp. v. Underwriters at Lloyd's London*, 2022 WL 17828980, at *10 n.2 (S.D. Tex. Nov. 14, 2022).

The Court concludes that Ms. Peterson has received all she could hope to obtain through her Chapter 541 and good faith and fair dealing claims on the current record. Summary judgment on those claims is appropriate.

## IV. CONCLUSION

The Court **GRANTS** Safeco's Motion for Summary Judgment and **DISMISSES** Ms. Peterson's claims with prejudice. A final judgment will issue separately.

**SO ORDERED.**

Signed July 11th, 2024.

*[signature: Ed Kinkeade]*
ED KINKEADE
UNITED STATES DISTRICT JUDGE